In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00408-CR**
**NO. 09-19-00409-CR**
**NO. 09-19-00410-CR**
**NO. 09-19-00411-CR**
**NO. 09-19-00412-CR**

_____

**FRANCISCO DELAROSA JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause Nos. CR 34056, 34057 (Counts I, II, III), 34058**

**MEMORANDUM OPINION**

In this case, a criminal appeal, the appellant challenges his convictions in three

separate causes: (1) Trial Court Cause Number 34056 (Tampering with Evidence);

(2) Trial Court Cause Number 34057 (Three Counts for Sexually Assaulting a

Child); and (3) Trial Court Cause Number 34058 (Improper Relationship Between

an Educator and a Student). The trial court consolidated the three cases for trial

1

before the same jury and tried them together in October 2019 in one criminal proceeding. In Trial Court Cause Number 34057, the case involving a three-count indictment alleging sexual assault of a child, the jury found Francisco Delarosa, Jr. guilty and assessed a twenty-year sentence on each count. In Trial Court Cause number 34058, the indictment alleging Delarosa engaged in an improper relationship with a student, the jury gave Delarosa a twenty-year sentence. And in Trial Court Cause Number 34056, the case involving the claim alleging Delarosa tampered with evidence, the jury found Delarosa guilty and then decided he should serve a five-year sentence. After the trial court signed five judgments in the three cases, Delarosa appealed. For convenience, we renumber Delarosa's issues and address them in the following order.

First, in issue one, Delarosa argues the evidence is insufficient to show that the sexual assaults, as alleged in the indictments, occurred without the victim's consent. In issue two, Delarosa argues that, because the trial court submitted the case to the jury in Trial Court Cause Number 34057 on the theory that he sexually assaulted a child when the indictment alleges he committed three counts of sexual assault, a fatal variance exists between the indictment and the charge. In issue three, Delarosa argues the State violated his rights to Due Process by indicting him on three counts claiming he was guilty of sexual assault but then trying him and submitting the case to the jury based on a theory he sexually assaulted a child, a crime with

2

which he was not charged. In issue four, Delarosa argues the evidence is insufficient to support his conviction for having an improper relationship with a student because the State failed to prove he worked at Dayton High School and proved instead that he worked "as a computer technician at the Elementary School." In issue five, Delarosa argues the trial court taxed costs of court incorrectly in the judgments that it rendered by duplicating costs when the record shows the State prosecuted him in the three causes (resulting in the five judgments) in a single proceeding.

We affirm Delarosa's convictions in Trial Court Cause Number 34056, 34057, and 34058. That said, the judgments the trial court rendered must be reformed. In Trial Court Cause Number 34057, Counts I-III, the judgments must be reformed to reflect that as to each of the counts, Delarosa was convicted for sexual assault and not for sexually assaulting a child. Additionally, the judgments in all five of the trial court causes must be reviewed and reformed to properly assess recoverable costs of court. We remand Trial Court Cause Numbers 34056-34058 to the trial court to render judgments so that it may correct the judgments in the Trial Court Cause Numbers 34056, 34057 (Counts I-III) and 34058 for the reasons explained below.

Background

In the discussion that follows, we view the evidence from Delarosa's trial in the light that favors the verdict the jury reached.[1] In our review, to decide whether the evidence supports Delarosa's conviction, we must decide whether the evidence before the jury allowed the jury, acting rationally, to find that Delarosa was guilty under a hypothetically correct charge, which means a charge that asks whether the evidence shows Delarosa committed the elements of the crime at issue beyond reasonable doubt.[2]

The record in Delarosa's appeal shows that a Liberty County Grand Jury indicted Delarosa, in August 2018, alleging he committed five crimes. The first of the indictments alleges that Delarosa, on or about November 3, 2017, tampered with evidence relevant to an investigation conducted by police. The second of the indictments is a three-count indictment charging Delarosa with three separate

---

[1]*See Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019).

[2]*See Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018) (A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried") (cleaned up); *Byrd v. State*, 336 S.W.3d 242, 248 (Tex. 2011) (noting that issues of materiality as between indictments and jury charges are "analyzed by looking to the essential elements of the particular criminal offense—the gravamen of that offense—and the hypothetically correct jury charge under the specific indictment or information").

assaults, all involving the same victim, *Laura*.[3] The three sexual assaults allegedly occurred on or before February 14, 2016, on or before October 15, 2016, and on or before July 15, 2017, and all three allegedly occurred when Delarosa contacted Laura's sexual organ with his, and without Laura's consent. The third indictment alleges that, on or about October 7, 2017, while an educator employed by "a public secondary school, namely Dayton High School, [Delarosa] intentionally or knowingly engage[d] in sexual contact with [Laura], a person who was enrolled in Dayton High School."

As relevant here, the State never asked the trial court, before or after Delarosa's trial began, for permission to amend the indictment alleging he sexually assaulted Laura in February 2016, October 2016, and July 2017. When the case went to trial in October 2019, Laura was eighteen. Fifteen witnesses testified in the guilt-innocence phase of the trial. The evidence in that phase shows Delarosa first met Laura and her mother several years before his romantic relationship with Laura began. Like Delarosa, Laura's mother worked for DISD (short for The Dayton Independent School District). In July 2015, Delarosa obtained full-time employment

---

[3]To protect the privacy of the victim, we refer to the victim the State identified in the indictment as "L.A.M." and to several other witnesses who testified in Delarosa's trial with pseudonyms. *See* Tex. Const. art. I, § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); *see also* Tex. Penal Code Ann. § 21.12(d).

5

with DISD, changing from his job as a part-time substitute teacher to a full-time position as a computer technician. In his position working on DISD's computers, Delarosa maintained an office at an elementary school within DISD, not at Dayton High. Even so, the testimony in Delarosa's trial allowed the jury to infer that on some occasions, including on or before October 7, 2017, the date relevant to Delarosa's indictment alleging he engaged in an improper relationship with a student, he had sexual contact with a student in a period when that student was enrolled at Dayton High.

Before Delarosa worked full-time as a computer technician for DISD, Delarosa moved to Dayton and took a job as substitute teacher with DISD. After moving to Dayton, Delarosa volunteered to coach softball on his daughter *Lisa's* team.[4] Laura played on the same team. Lisa and Laura became friends while on the team. By October 2017, Laura's mother gave Laura permission to spend weekends with Lisa at Delarosa's home. At trial, Laura testified her romantic relationship with Delarosa developed shortly after she began spending her weekends with Lisa, overnight, at Delarosa's home.[5]

---

[4]We also use a pseudonym to disguise the name of Delarosa's daughter, a minor at the times relevant to the events described in the opinion.

[5]At the times relevant to the trial, the testimony shows that Delarosa and his wife (Lisa's mother) were divorced.

At trial, Laura testified she customarily slept in Delarosa's bedroom when spending her weekends at Delarosa's home. Laura also testified that after she and Delarosa began having sex, they continued having relations every weekend for the next "three or four years."

For his part, Delarosa testified at trial that he never had sexual intercourse with Laura. Even so, he admitted he told Laura as early as July 2015 that he was in love with her. He also agreed he gave Laura gifts in the years he'd known her, gifts that included gift cards, black lingerie, and toward the end of their relationship, an engagement ring. Although Delarosa admitted that he had given Laura an engagement ring, he denied ever asking Laura for her hand in marriage.

Around August or September 2017, Laura's family home flooded when Liberty County was hit by Hurricane Harvey. Damages from the hurricane also required Delarosa to evacuate his home. Ultimately, Laura, other members of Laura's family, Delarosa, and Lisa, all began living together temporarily in the home of Laura's uncle, Michael, while their respective homes were being repaired.

While under Michael's roof, Michael and his wife noticed signs that Laura and Delarosa seemed to be engaged in what appeared to them to be an inappropriate relationship, given the respective differences in their age. At trial, Michael's wife testified she noticed Laura "was always pushing herself into [Delarosa], him into her." According to Michael's wife, what she saw when everyone was living in their

home made her "uncomfortable[,]" since Delarosa was so much older than Laura. She also noticed that when Delarosa and Laura watched television, they sat close together and did not leave "much room for anybody else[.]"

Michael's son-in-law described similar behavior. According to the son-in-law, who was also living with Michael at that time on a temporary basis, when Delarosa and Laura watched television, they sat "pretty close together, like boyfriend and girlfriend stuff." Eventually, Delarosa's behavior made Michael's wife so uncomfortable, so she asked Delarosa to leave. While Delarosa agreed to leave, he tried to return a week or more later. But upon his attempt to return, Michael told Delarosa he was not welcome in the home.

In October 2017, Michael's wife told a Harris County Constable she was concerned about what she had seen when Laura and Delarosa were living in her home. The Harris County Constable's Office is the agency that is responsible for security at Dayton High, where Laura was enrolled in school. Officer Christine Ruiz was the security officer for the Harris County Constable's Office at Dayton High. Officer Ruiz contacted Laura in response to the report from Michael's wife. Officer Ruiz spoke to Laura, but Laura denied anything inappropriate had occurred. Nonetheless, Officer Ruiz pursued the matter; she took Laura to Bridgehaven Children's Advocacy Center, where Laura was interviewed. At Bridgehaven, Laura insisted no sexual contact had occurred. Then, on October 11, 2017, Officer Ruiz

8

took Laura to a sexual assault nurse at Christus-St. Elizabeth Hospital. At Christus, based on the records of the sexual assault nurse, which were admitted into evidence, Laura told the nurse Delarosa never sexually assaulted her and that her cousin had simply overreacted when she told the police otherwise. According to Laura's medical records, Laura told the nurse that Delarosa did nothing more but talk with her about her problems.

In November 2017, police obtained a search warrant and searched Delarosa's phone. When the police stopped Delarosa's car in searching for his phone, he handed them a phone, but the phone he surrendered was not the phone listed in the warrant. Later, police found the phone they were looking for in a search of Delarosa's home. After locating Delarosa's phone, as listed in the warrant, police discovered that some of the text messages that were on the phone had been deleted.

The investigation conducted by the police stalled for several months but picked up again in May 2018. In May 2018, Laura talked to Officer Ruiz again. In that conversation, Laura told Officer Ruiz that she and Delarosa had been engaged in an affair that involved sex.

In August 2018, a Liberty County Grand Jury indicted Delarosa for committing the five crimes, previously discussed above. The three-count indictment for sexual assault, however, never alleges Laura was a child when the alleged sexual assaults occurred. And the three-count indictment is also silent about Laura's date

9

of birth, nor does the indictment allege that Laura was a child when the sexual assaults occurred. Under the three-count indictment for sexual assault, the State alleged Delarosa contacted Laura's sexual organ with his sexual organ "without the consent of the complainant[.]"[6]

When the guilt-innocence phase of Delarosa's trial ended, the trial court submitted the case under on a charge that asked the jury to decide whether, on each of the respective dates alleged in the three-count indictment, if Delarosa intentionally or knowingly contacted the sexual organ of Laura, a child younger than seventeen, with his sexual organ. The charge did not ask whether the Delarosa contacted Laura's sexual organ without her consent. The court submitted additional questions that asked the jury to decide whether Delarosa was guilty of tampering with evidence and whether he engaged in an improper relationship with a student while employed by DISD.

To analyze Delarosa's arguments in his appeal, we turn first to his main argument, which is that the evidence is insufficient to support the three judgments convicting him of sexually assaulting a child, and his argument that a fatal variance exists between the indictments on those convictions and the charge.

---

[6]Tex. Penal Code Ann. § 22.011(a)(1)(A).

Analysis

*A. Is the evidence sufficient to prove sexual assault?*

On appeal, Delarosa argues the State never proved that any of his sexual encounters with Laura occurred without her consent. To support his argument, Delarosa points to Laura's testimony that during their relationship, she thought they were in love.

The three-count indictment alleges that Delarosa, on or about three different dates, contacted Laura's sexual organ with his sexual organ without her consent. The State never amended the indictment before or during the trial to charge Delarosa with sexually assaulting a child, a strict liability crime, since offenses involving sexual assault against children do not require proving that the victim did not consent to the assault.[7] But here, the State went to trial on the three-count indictment alleging that Delarosa sexually assaulted Laura without her consent, so the State had the burden to prove that Laura did not consent to the sexual contact it alleged with Delarosa on the three occasions that were at issue in the trial.[8]

In our review, we must decide whether the evidence before the jury is sufficient to support the verdict under the standard established by the United States

---

[7]*Compare id.* (sexual assault), *with id.* § 22.011(a)(1)(B) (sexual assault of a child, a strict liability offense that does not include proving the sexual contact act occurred without the child's consent).

[8]*Id.* § 22.011(a)(1)(A).

Supreme Court over forty years ago in *Jackson v. Virginia*.[9] Under that standard, the evidence is sufficient to support a defendant's conviction if the evidence would have allowed a jury, acting rationally, to find the defendant committed the essential elements of the offense with which he was found guilty beyond reasonable doubt.[10] Since the jury has the right to make credibility decisions about the witnesses and to weigh the evidence admitted in the trial, we consider the evidence the jury considered in deciding if it supports the verdict "in the light most favorable to the verdict."[11]

Accordingly, in evaluating the evidence, we recognize the jury is the "sole judge of the credibility of a witness's testimony and the weight to assign to that testimony."[12] As the factfinder, the jury has the right to "believe all, some, or none of a witness's testimony."[13] Jurors may draw reasonable inferences from the evidence, but each inference the jury draws from the evidence must be "supported

---

[9]*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Herron v. State*, 625 S.W.3d 144, 152 (Tex. Crim. App. 2021).
[10]*Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).
[11]*Id.*
[12]*Id.*
[13]*Id.*

by the evidence produced at trial."[14] "If the record supports contradictory reasonable inferences, we presume that the jury resolved the conflicts in favor of the verdict."[15]

In evaluating the evidence, we examine the evidence from the standpoint of the elements of the offense alleged in the indictment as it is defined in a hypothetically correct charge.[16] A hypothetically correct charge is a charge that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[17] If the appellate court determines that the evidence doesn't support the defendant's conviction, we are required to reverse the trial court's judgment and order the defendant acquitted.[18]

Turning to Delarosa's case and his three-count indictment for sexual assault, a hypothetically correct charge required the State to prove—beyond reasonable

---

[14]*Id.*; *see also Jackson,* 443 U.S. at 319; *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

[15]*Metcalf*, 597 S.W.3d at 865.

[16]*Ramjattansingh*, 548 S.W.3d at 546 (A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.") (cleaned up).

[17]*Id.* (cleaned up).

[18]*Tibbs v. Florida*, 457 U.S. 31, 41 (1982); *Garcia v. State*, 367 S.W.3d 683, 686-87 (Tex. Crim. App. 2012).

doubt—that, on or about the three dates alleged in the indictment Delarosa (1) intentionally or knowingly (2) contacted Laura's sexual organ with his sexual organ without her consent.[19] The jury heard evidence in Delarosa's trial that allowed it to infer that Laura was fourteen-years old when, in February 2016, the first of the three sexual assaults occurred, fifteen-years old when, in October 2016, the second of the three sexual assaults occurred, and sixteen-years old when, in July 2017, the third of the three sexual assaults occurred. On each of those occasions, the jury could infer from the testimony, when viewed in the light that favors the verdict, that he contacted her sexual organ with his.

That said, during the trial, the prosecutor never asked Laura whether she consented to the sexual contacts she described engaging in with Delarosa during the three-to-four-year period that she described. And to be fair, from Laura's standpoint as a fourteen to sixteen-year-old child, she believed that she and Delarosa were in love during the periods covered by the three-count indictment. Still, the prosecutor did ask Laura about what she told Officer Ruiz when, in 2018, she approached Officer Ruiz and told the officer she and Delarosa were engaged in a relationship that included sex. The record shows Laura gave Officer Ruiz a written statement,

---

[19]Tex. Penal Code Ann. 22.011(a)(1)(C).

and while the written statement is not in evidence, Laura described what it said, stating:

> Q. [By prosecutor] Do you remember writing, "I am aware that I am a minor and unable to give consent"?
> A. [Laura] I remember.
> Q. [By prosecutor] And that came from your thought process?
> A. [Laura] Yes.

In addition to the above testimony, the record shows that while on cross-examination, Delarosa testified he was not contesting anything in the case except the State's claim that he had sexually assaulted Laura. As to that testimony, Delarosa stated:

> Q: So we agree then, basically, in every element of the improper relationship and the sexual assault except for that a sexual assault occurred?
> A: Okay. Say that again.
> Q: The only thing you're disputing – you're not disputing your relationship with her; you're not disputing you're in love with her. The only thing you're disputing is that you had sexual intercourse with her?
> A: Yes. Correct.

Under section 22.011(b)(4), Laura was a minor when the three sexual assaults allegedly occurred.[20] And under section 22.011, minority is a "defect," a defect the evidence allowed the jury to find was known to Delarosa on each of the three occasions relevant to the three sexual encounters that resulted in Delarosa's

---

[20]*Id*. § 22.011(b)(4).

15

convictions for the sexual assault.[21] So in this case, the State proved lack of consent by proving Laura's age and by proving Delarosa knew Laura was underage, as alleged in the indictment, evidence that established a statutory lack of consent sufficient to satisfy the requirements of subsection (a)(1).[22]

We conclude the evidence meets the *Jackson* standard under a hypothetically correct sexual assault charge, a charge that should have asked the jury whether the three assaults occurred without Laura's consent. But had the charge included lack of consent, we are convinced the jury would still have convicted Delarosa given his admission that he was not contesting any of the issues and that instead he claimed the two of them had never engaged in any sexual acts. For these reasons, Delarosa's first issue asserting the evidence is insufficient to support his convictions because the State failed to prove lack of consent is overruled.

B. *Is there a material and fatal variance between the charge, submitted under a theory charging Delarosa with sexually assaulting a child, and the indictment, charging Delarosa with three counts of sexual assault?*

In Delarosa's next two issues, issues two and three, he argues a material and fatal variance exists between his three-count indictment for sexual assault and the charge the trial court submitted asking the jury if he sexually assaulted a child. According to Delarosa, the indictment failed to require the jury to decide if the three

---

[21]*Id.*
[22]*See id.* § 22.022(a)(1).

16

sexual assaults occurred without Laura's consent, one of the elements of sexual assault.

For its part, the State concedes the charge is erroneous because it fails to ask the jury to decide whether the assaults occurred without Laura's consent. But even though the State concedes error, it argues the error was not egregious because Delarosa did not object to the charge and has never claimed that he did not know that Laura was underage when the two engaged in the sexual acts on the dates at issue in the trial.[23]

The purpose of an indictment is to inform the accused of the accusation the State has filed against him.[24] The information in the defendant's indictment is designed to notify the defendant of the offense or offenses with which the defendant is charged so the defendant may prepare for trial.[25] Chapter 21 of the Texas Code of Criminal Procedure contains guidance about what prosecutors should include in the defendant's indictment.[26] Article 21.03, for example, provides: "Everything should be stated in an indictment which is necessary to be proved."[27] Generally, proving

---

[23]In the charge conference, when the trial court asked Delarosa's attorney if he had any objection to the charge, he responded: "No, your Honor."

[24]U.S. CONST. amend. VI; Tex. Const. art. I, § 10.

[25]*Curry v. State*, 30 S.W.3d 394, 398 (Tex. Crim. App. 2000).

[26]*Id.*

[27]Tex. Code Crim. Proc. Ann. art. 21.03.

sexual assault requires the State to prove the sexual assault occurred without the victim's consent.[28]

When we evaluate charge error, we first evaluate whether an error exists.[29] If an error occurred, we must then analyze the error for harm.[30] If the error was preserved by a proper and timely-filed objection, we review harm.[31] But if the error was not preserved—which is the case here—the defendant must show the charge error resulted in egregious harm.[32] "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."[33] To obtain a reversal by showing the defendant suffered egregious harm, the defendant must demonstrate actual harm occurred from the error in the charge in his appeal.[34]

In Delarosa's case, the charge submitted to the jury authorized the jury to find Delarosa guilty of sexually assaulting a child without requiring the jury to decide whether the three sexual assaults occurred without Laura's consent, even though lack of consent was an element of the three sexual assaults described in the indictment.

---

[28]*See* Tex. Penal Code Ann. § 21.011(a)(1).
[29]*Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).
[30]*Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003).
[31]*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).
[32]*See id.*; *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004).
[33]*Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).
[34]*Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).

Since we agree with the State that the omission constitutes charge error, we must consider whether the error caused Delarosa to suffer egregious harm. In assessing egregious harm, we look to the "entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole."[35]

First, we turn to the charge. In it, we find nothing that requires the jury to decide whether Laura consented to any of the sexual acts she described in the trial, as they relate to the lack-of-consent element in the indictment. None of the language in the charge corrects or mitigate that deficiency. For that reason, the first of the *Almanza* factors favors finding egregious harm.[36]

Next, we look to the evidence in the trial, which focused on the State's theme that Delarosa was a sexual predator who developed a relationship of trust with Laura and her family so that he could take advantage of her. Under that theme, the State claimed Delarosa gave Laura gifts to show Laura he loved her, grooming her to engage in the sexual acts that he carried out. By convincing Laura to trust him, and by convincing Laura he loved her and wanted to marry her, Delarosa created a false

---

[35]*Almanza*, 686 S.W.2d at 171; *Shavers v. State*, 985 S.W.2d 284, 291 (Tex. App.—Beaumont 1999, pet. ref'd).
[36]*See Almanza*, 686 S.W.2d at 171.

picture and manipulated Laura, taking advantage of her sexually based on Laura's lack of judgment and immaturity given her tender age. Given Laura's age and the evidence, evidence the jury could have inferred is behavior consistent with grooming Laura and manipulative behavior designed to take advantage of someone based on their immature judgment and sexual development, the jury could have inferred that Laura never made a fully informed decision when agreeing to the sexual acts alleged in the indictment, given her age at that time. In addition to the circumstantial evidence before the jury in the trial, Delarosa told the prosecutor, on cross-examination, he was only contesting that he and Laura engaged in sex. This evidence weighs against a finding of egregious harm.[37]

Next, we examine the arguments the parties presented during trial. In opening statement, the prosecutor argued he believed the evidence would show that Delarosa was "guilty of all the charges we have against him." Just before making that argument, the prosecutor (at the trial court's request) read the indictments to the jury, including the three-count indictment charging Delarosa with sexually assaulting Laura without her consent. When the prosecutor presented his closing argument, he focused on the evidence showing Delarosa became obsessed with Laura when she began playing softball with his daughter, developing his relationship with her as a

[37]*See id.*

20

trusted coach on her softball team to a relationship as a trusted adult who gave her gifts and attention and promises of enduring love. In contrast, Delarosa's attorney pointed to the fact that Laura, on many occasions before May 2018, denied that she and Delarosa were involved in a sexual relationship. Simply put, Delarosa did not defend the case on the basis that the sex Laura and Delarosa engaged in was consensual; instead, the theory used in his defense was that no sexual acts occurred. Throughout the argument, the attorney representing Delarosa referenced the three offenses as "sexual assaults;" he never described them by referring to them as sexual assaults involving a child. Thus, the arguments of the attorneys in closing weigh against a finding of egregious harm.[38]

Finally, Delarosa's attorney responded "[n]o" when the trial court asked him if he had any objections to the charge. The fourth *Almanza* factor also weighs against a finding of egregious harm.

Considering the fact the evidence conclusively proves that Laura was younger than seventeen when the three sexual assaults occurred and conclusively shows that no rational juror could have found from the evidence admitted in the trial that Delarosa was unaware that Laura was not yet seventeen when the three sexual assaults occurred, we conclude the record shows Delarosa did not suffer any

---

[38] *See id.*

21

egregious harm due to the charge error he complains about in his appeal.[39] Because Delarosa was not deprived of a fair and impartial trial, issues two and three are overruled.[40]

*Did Delarosa, while employed at DISD, engage in an improper relationship with a student enrolled at Dayton High?*

In issue four, Delarosa argues the State failed to prove that Delarosa was employed by Dayton High when Laura was enrolled there and, as an educator, he engaged with her in an improper sexual relationship.[41] Delarosa notes the evidence shows that he worked for DISD in 2016 and 2017 as a computer technician, but he points out that during those years he never maintained his office at Dayton High. Instead, the evidence before the jury shows he maintained his office at an elementary school, located in the district.

Under the Texas Penal Code, employees of school districts violate the Penal Code by having "sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school at

---

[39]*See id.*

[40]*See id.*

[41]While Delarosa argued his sufficiency issues for both the three sexual assault convictions and the sexual assault of a child convictions in his first issue, we discuss them separately as if he presented them in separate issues, labeling his improper relationship argument as a fourth issue for the purpose of discussing it here.

22

which the employee works."[42] In 2016, the Court of Criminal Appeals explained that to prove a violation of section 21.12(a)(1), the State must prove the employee worked at the same school where the student was enrolled.[43] But proving the employee violated the statute does not necessarily require that the State prove the employee officed at the school, as the State need prove only that the employee worked at the school on or before the date alleged in the indictment when the sexual contact is alleged to have occurred. As the Court of Criminal Appeals explained in *Sutton v. State*, "[w]hile it is true that employees of a school are generally also considered to be employees of the school district overseeing that school, the inverse may or may not be true, depending on the facts of the case."[44] So here, the question is not whether the evidence proves Delarosa officed at Dayton High; rather, the question is whether he worked there on or before October 7, 2017, when the sexual contact with Laura that is alleged in the indictment occurred.

When viewed in the light that favors the verdict the jury reached, the evidence admitted in Delarosa's trial allowed the jury to infer that he performed work on

---

[42]Tex. Penal Code Ann. § 21.12(a)(1). We note that while the title of the statute describes the statute as an improper relationship between an educator and a student, the language of the statute prohibits sexual conduct between any employee of a public or private primary or secondary school and a student "enrolled in a public or private primary or secondary school at which the employee works." *Id.*
[43]*State v. Sutton*, 499 S.W.3d 434, 437 (Tex. Crim. App. 2016).
[44]*Id.* at 436.

computers at Dayton High when he engaged in an improper relationship with Laura while she was enrolled as a student at Dayton High. The evidence in the trial shows that but for around two weeks in September 2017, Laura was enrolled at Dayton High from 2015-2018, ultimately graduating from Dayton High in May 2018.

As to the evidence about Delarosa working at Dayton High, the records of the nurse that Laura saw at Christus Hospital on October 11, 2017, reflect that Laura told the nurse she saw Delarosa at a computer class she was taking on Monday when "he just happened to stop and check on the computers. He gave me a water bottle and some peanuts and left. That's all." Laura's testimony, when viewed in the light favoring the jury's verdict, supports the view that in October 2017, the timeframe when Laura's note indicates Delarosa was working on computers at Dayton High, he and Laura were engaged in a sexual relationship given Laura's testimony that they had sex with each other every weekend.

When reviewing courts are tasked with reviewing a jury's verdict, it is required to defer to the reasonable inferences the jury draws "from basic facts to ultimate facts."[45] Section 21.12(a)(1) applies to a school's employees who engage in sexual activity with students enrolled at the school where the "employee works."[46] Here, the evidence shows Delarosa performed at least some work at the school where

---

[45]*Hooper*, 214 S.W.3d at 13.
[46]Tex. Penal Code Ann. § 21.12(a)(1).

24

Laura was enrolled, despite the evidence showing he did not have his office there. And the work Delarosa performed at Dayton High relates to a period when he and Laura were regularly, according to Laura, having sex.

We conclude the jury had sufficient evidence to infer that Delarosa worked at Dayton High during a period in which he engaged in an improper relationship with Laura during a period that occurred on or before the date alleged in the indictment.[47] Issue four is overruled.

*What Are the Properly Taxable Costs?*

In issue five, Delarosa complains the trial court (through the District Clerk) violated Article 102.073 of the Code of Criminal Procedure by assessing multiple court costs and fees in Trial Court Cause Numbers CR34056, CR34057, and CR34058.[48] According to Delarosa, by trying him on three offenses in a single criminal action, the trial court was required to "assess each court cost or fee [in the three cases] only once[.]"[49]

We have carefully reviewed the five judgments the trial court signed on Delarosa's convictions and compared them with the District Clerk's bills, which

---

[47]*See Witcher v. State*, 2022 Tex. Crim. App. LEXIS 33, at *5 (Tex. Crim. App. 2022) (holding that juries are permitted to draw reasonable inferences from the evidence in inferring dates of crimes).

[48]Tex. Code Crim. Proc. Ann. art. 102.073(a).

[49]*Id.*

25

purport to itemize taxable costs. In reviewing the District Clerk's cost bills, however, it is clear the District Clerk taxed Delarosa with costs relevant to costs taxable for convictions for the offenses classified as a sexual assault of a child, which differ from the taxable costs the Legislature authorized to be taxed against defendants convicted of sexual assault. So, when comparing the cost bills in the cases, it further appears the District Clerk's bills duplicate costs and violate Article 102.073.[50]

However, on the record before us in the appeal, we cannot determine what parts of the costs taxed to Delarosa must be deleted to correct the judgments and reform them so they with the statutes relevant to recovering taxable costs. And Delarosa is also entitled to have the judgments tied to his convictions for sexually assaulting Laura reformed so they recite they are for sexual assault and not for sexually assaulting a child.

## Conclusion

Having resolved Delarosa's issues arguing he is entitled to judgments acquitting him of some of his convictions against him, we affirm all five convictions of conviction; however, we sustain Delarosa's arguments in part, as he is entitled to have judgments that recite he was convicted on three counts of sexual assault rather than judgment that recite he was convicted on three counts of sexually assaulting a

---

[50]*Id.*

26

child. We also sustain Delarosa's argument that five judgments improperly duplicate taxable costs. Having sustained these arguments, we reverse the judgments and remand the matter to the trial court for the entry of corrected judgments in Trial Court Cause Numbers CR34057 (Count I), CR34057 (Count II), and CR34057 (Count III) so the judgment recites Delarosa's convictions were for sexual assault.[51] And to the extent the five judgments erroneously tax duplicate costs of court, we remand the matter for the entry of corrected judgments so the trial court may correct the assessment of court costs, and not tax costs that violate Article 102.073.[52]

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on August 9, 2021
Opinion Delivered March 9, 2022
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

[51]Based on the facts alleged in the three-count indictment, Delarosa violated section 22.011(a)(1)(C) of the Texas Penal Code. That section is the section that should be listed in the corrected judgments as the statute that Delarosa was convicted of violating in the trial.

[52]Tex. Code Crim. Proc. Ann. art. 102.073(a).

27